IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA


OLAF SUTTON,                          :    CIVIL ACTION
                                      :    NO. 11-7005
          Plaintiff,                  :
                                      :
     v.                               :
                                      :
CITY OF PHILADELPHIA, et al.,         :
                                      :
          Defendants.                 :


M E M O R A N D U M

EDUARDO C. ROBRENO, J.                              MAY 20, 2014


**Table of Contents**

I.   INTRODUCTION ............................................... 3
II.  STANDARD OF REVIEW ........................................ 8
III. MOOTNESS .................................................. 9
IV.  ARAMARK DEFENDANTS' MOTION FOR SUMMARY JUDGMENT .......... 13
  A.   State Action Analysis .................................. 14
  B.   Plaintiff's First Amendment Claims ..................... 16
    1.   Claims Against Aramark ............................... 17
    2.   Claim Against Flaherty in Official Capacity .......... 21
    3.   Claim Against Flaherty in Individual Capacity ........ 23
  C.   Fourteenth Amendment Claims ............................ 25
    1.   Claim Against Aramark ................................ 25
    2.   Claim Against Flaherty in Official Capacity .......... 31
    3.   Claim Against Flaherty in Individual Capacity ........ 31
  D.   RLUIPA Claims Against Aramark Defendants ............... 34
    1.   Claim Against Aramark ................................ 34
    2.   Claim Against Flaherty in Individual Capacity ........ 38
    3.   Claim Against Flaherty in Official Capacity .......... 39

V.   CITY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ............. 40

  A.   First Amendment Claims ................................ 40

    1.   Claims Against the City ............................ 41

    2.   Claims Against All Defendants in Official Capacities .. 44

    3.   Claims Against All Defendants in Individual Capacities 45

  B.   RLUIPA Claims ........................................ 48

    1.   Claims Against the City ............................ 49

    2.   Claims Against All Defendants in Official Capacities .. 51

    3.   Claims Against All Defendants in Individual Capacities 52

VI.  CONCLUSION ............................................. 52

## I.      INTRODUCTION

Olaf Sutton ("Plaintiff") is an inmate in the Philadelphia Prison System ("PPS") and a practicing Muslim. Compl. ¶¶ 1, 21, ECF No. 30.  As a Muslim, Plaintiff's religion prohibits eating meat unless the meat is Halal.[1] Plaintiff was incarcerated in the Curran-Fromhold Correctional Facility ("CFCF") on March 26, 2010, and transferred to Philadelphia Industrial Correctional Center ("PICC") on or about January 2, 2012.  Compl. ¶ 20; Pl.'s Resp. Aramark Mot. Summ. J., Ex. 8, Sutton Mem. 104.  Both facilities are in the PPS.

A brief overview of the PPS's religious alternative meal system is necessary to understand Plaintiff's claims.  The PPS offers two types of religious diets: vegetarian and kosher. Pl.'s Resp. Aramark Defs.' Mot. Summ. J., Ex. 9, Pl. Dep. 28:9-12, ECF No. 68.  Muslim inmates are offered vegetarian meals and Jewish inmates are offered kosher meals that occasionally contain meat.  Compl. ¶ 28; Aramark Defs.' Mot. Summ. J. 21 ("The prisons accommodate the free exercise of Judaism by providing Kosher meals, which occasionally include Kosher meat.").

---

[1]      Halal is the Arabic word for "permissible."  In regards to food, there are certain foods which are forbidden for Muslims to eat under Islamic law and certain methods of animal slaughter which would make otherwise permissible meats impermissible.

The prison's chaplain is responsible for deciding which inmates are entitled to receive religious diets and creating a list of those inmates for the prison's food provider. See Pl.'s Resp. City Defs.' Mot. Partial Summ. J. 5, ECF No. 70. Aramark is the food provider for the PPS and is tasked with preparing meals for each prisoner in compliance with the chaplain's list.  See Aramark Defs.' Mot. Summ. J. 8-9, ECF No. 59.

On September 21, 2010, following a request by Plaintiff, the prison's chaplain placed Plaintiff on a special diet to accommodate his religious practice.  Compl. ¶ 28. Plaintiff is not a vegetarian and desires to eat meat.  Compl. ¶ 29.  According to Plaintiff, his religion permits him to eat the meat contained in the kosher meals.[2]  Aramark Defs.' Mot. Summ. J. 8.  The prison's chaplain, however, denied Plaintiff's request to be placed a kosher diet and instead placed him on a vegetarian diet.  Id.; Compl. ¶ 28.  As a result, Plaintiff's approved diet does not contain any meat.  Compl. ¶ 55.

Although Plaintiff was placed on a vegetarian diet, he claims that on several occasions during his incarceration at

---

[2]      Generally speaking, Kosher food complies with Muslim Halal restrictions and would thus be permissible, under Islamic rules, for a Muslim to eat.  The Court accepts that the meats in the non-vegetarian non-Kosher meals were not Halal and the meats in the Kosher meals would be Halal, as the parties themselves have not indicated otherwise.

4

CFCF and PICC, he was not served vegetarian meals.  Compl. ¶ 33.
Specifically, Plaintiff claims that he was not served several
religious alternative breakfasts in October 2010, any vegetarian
meals from January 2, 2012, to January 9, 2012, and any
vegetarian meals from December 20, 2012, to January 1, 2013.
Compl. ¶ 31; Pl. Dep. 40:16-22.  According to Plaintiff, during
the first and last weeks of 2012, he was forced to choose
between eating and violating the tenants of his religion.  Pl.
Dep. 42:10-23; Pl.'s Resp. Aramark Mot. Summ. J., Ex. 8, Sutton
Mem. 104.

        Lastly, in May 2011, Plaintiff commenced a hunger
strike to protest what he believes to be a discriminatory
religious alternative meal system.  See Pl.'s Resp. City Defs.'
Mot. Partial Summ. J. 4.  Plaintiff alleges that his free
exercise rights were violated by the conduct of two prison
officials in relation to his hunger strike.  Compl. ¶¶ 50, 51.
In the early morning hours of May 12, 2011, Plaintiff was
brought to the prison's mental health unit by a prison employee.
Compl. ¶ 50.  Later that morning, another prison employee
entered Plaintiff's cell, allegedly with food that violated
Plaintiff's religious dietary restrictions, and told Plaintiff
to stop his hunger strike or be brought to the "hole."[3]  Compl. ¶

---

[3]        The Court takes this as a reference to the prison's
Restricted Housing Unit ("RHU").

51.  Plaintiff drank some of the orange juice that was on the tray and the prison employee left Plaintiff's cell.  Compl. ¶ 50.  Plaintiff was never brought to the RHU.  Compl. ¶ 50.

Plaintiff commenced this litigation by filing a pro se complaint. ECF No. 3.  After obtaining counsel, Plaintiff filed two amended complaints. ECF Nos. 6, 30.  The second amended complaint contains six counts.[4]  The counts include civil rights violations pursuant to 42 U.S.C. §§ 1983 and 1988 (Count I), violations of the Fourteenth Amendment (Count II), violations of the First Amendment (Count III), violations of the Religious Land Use and Institutionalized Persons Act ("RLUIPA") (Count IV), intentional and negligent infliction of emotional distress (Count V), and conspiracy to deprive Fourteenth and First Amendment rights (Count VII).  Plaintiff names several defendants.  For organizational purposes, the Court will divide the defendants into two groups: City Defendants[5] and Aramark Defendants.[6]

On May 18, 2012, the Aramark Defendants filed a motion to dismiss.  ECF No. 9.  Following the motion, the Court

---

[4]     The sixth numerical count is labeled as "Count VII."

[5]     The City of Philadelphia (the "City"); Louis Giorla ("Giorla"); John P. Delaney ("Delaney"); Phyllis Taylor ("Chaplain Taylor"); Sergeant Gamgemi; and Sergeant Pote.

[6]     Aramark Correctional Services, Inc. ("Aramark") and Walter Flaherty ("Flaherty").

dismissed Counts I, V, and VII.  Order, Sept. 6, 2012, ECF No. 40.  The City Defendants did not file a motion to dismiss.

On March 20, 2014, the Aramark Defendants informed the Court that Plaintiff was transferred from PICC to SCI Graterford on November 27, 2013. Aramark Defs.' Supp. ¶. 6, ECF No.74.  As of March 12, 2014, however, Plaintiff has been incarcerated at SCI Camp Hill, which is located on the outskirts of Harrisburg.[7] Pl.'s Resp. Aramark Defs.' Supp., Ex. A, 4.  Plaintiff argued that he would likely be incarcerated again in the PPS because he had an upcoming trial in the Court of Common Pleas of Philadelphia County.  Id. at 2.  Plaintiff has since pled guilty to those charges and was transferred back to a Pennsylvania Department of Corrections facility.  Plaintiff's sentence stemming from this new guilty plea will run concurrent to his previous sentence and will not require him to serve any time within the PPS.

Pending before the Court are Aramark Defendants' Motion for Summary Judgment and the City Defendants' Motion for Partial Summary Judgment.  Plaintiff has filed responses to both motions (ECF Nos. 68, 70, 75) and the Aramark Defendants have filed a reply (ECF. 72) to Plaintiff.  The motions are ripe for disposition.

---

[7]     SCI Graterford and SCI Camp Hill are both part of the Pennsylvania Department of Corrections, not the PPS.

## II.    STANDARD OF REVIEW

Summary judgment is appropriate if there are no genuine disputes of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a). "A motion for summary judgment will not be defeated by 'the mere existence' of some disputed facts, but will be denied when there is a genuine issue of material fact."  Am. Eagle Outfitters v. Lyle & Scott Ltd., 584 F.3d 575, 581 (3d Cir. 2009) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986)). A fact is "material" if proof of its existence or non-existence might affect the outcome of the litigation, and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson, 477 U.S. at 248.

In undertaking this analysis, the court views the facts in the light most favorable to the non-moving party. "After making all reasonable inferences in the nonmoving party's favor, there is a genuine issue of material fact if a reasonable jury could find for the nonmoving party."  Pignataro v. Port Auth. of N.Y. & N.J., 593 F.3d 265, 268 (3d Cir. 2010) (citing Reliance Ins. Co. v. Moessner, 121 F.3d 895, 900 (3d Cir. 1997)).  While the moving party bears the initial burden of showing the absence of a genuine issue of material fact, meeting this obligation shifts the burden to the non-moving party who

must "set forth specific facts showing that there is a genuine issue for trial."  Anderson, 477 U.S. at 250.

III.    **MOOTNESS**

The Aramark Defendants argue that Plaintiff's claims for injunctive relief are moot because Plaintiff is no longer incarcerated in the PPS.[8]  Plaintiff initially responded that his claims for injunctive relief are not moot under the "capable of repetition" doctrine.  Pl.'s Resp. Aramark Defs.' Supp. 2-3. Plaintiff claimed that the "capable of repetition" doctrine is applicable because he will likely be incarcerated in the PPS during the adjudication of his upcoming trial in Philadelphia. Subsequently, however, Plaintiff pled guilty and has been transferred out of the PPS.  Status Report, May 7, 2014, ECF No. 76.  Plaintiff's counsel indicate that as a result of Plaintiff's guilty plea his "sentences will be served in the Pennsylvania Department of Corrections system, and not at all in Philadelphia."  Status Report.

It is well settled that this Court may only adjudicate "live" cases or controversies.  Abdul-Akbar v. Watson, 4 F.3d 195, 206 (3d Cir. 1993).  "[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally

_____

[8]      Specifically, Aramark argues that it does not serve food at the SCI Graterford Prison.

9

cognizable interest in the outcome." Powell v. McCormack, 395 U.S. 486, 496 (1969).  Nonetheless, the "capable of repetition" doctrine holds that a claim is not moot if "(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again." Weinstein v. Bradford, 423 U.S. 147, 149 (1975).

The first element of the "capable of repetition" doctrine is satisfied here because the challenged action—service of meat-containing religious alternative meals to Jewish inmates, but not Muslim inmates—was "in its duration too short to be fully litigated." Id.  Nonetheless, the Court must still determine whether there is a reasonable expectation that Plaintiff will face the same discrimination in the future.

Generally, courts have held that an inmate's release from a correctional institution makes his or her claims for injunctive relief moot.  See, e.g., id. (holding former parolee's claims were moot because plaintiff was released from parole supervision); Doe v. Delie, 257 F.3d 309, 314 (3d Cir. 2001) (holding plaintiff's claims for injunctive relief against defendant-prison officials were moot because plaintiff was no longer incarcerated at the institution where his claims originated); Abdul-Akbar, 4 F.3d at 206 (holding former inmate's

claims for injunctive relief were moot because inmate was released from incarceration); Hontz v. Berks Cnty. Prison, No. 12-2663, 2012 WL 5199370 (E.D. Pa. Oct. 19, 2012). In such cases, courts focus on the reasonableness of the probability that the plaintiff would be subject to the same harms.

For example, in Abdul-Akbar the plaintiff filed a § 1983 claim against the prison alleging that the legal resources in the prison's library were inadequate. Abdul-Akbar, 4 F.3d at 197. The plaintiff was released before his claim was adjudicated. Id. Nonetheless, the district court granted an injunctive remedy against the defendant prison. Id. at 200-01. The Third Circuit vacated the district court's injunctive relief order because the plaintiff's claim was moot. Id. at 206-07. Specifically, the court held that the plaintiff did not satisfy the "capable of repetition" doctrine because nothing in the record supported the assumption that the plaintiff would be incarcerated in the future in the same prison. Id. The court went on to state that "[s]uch conjecture as to the likelihood of repetition has no place in the application of this exceptional and narrow grant of judicial power." Id. at 207.

Of particular note in Delie, the plaintiff sought injunctive relief against employees of the prison where he was incarcerated. Doe v. Delie, 257 F.3d at 312. Shortly before oral arguments the plaintiff informed the Third Circuit that his

conviction was pending a re-trial.  Id. at 313.  The plaintiff's
conviction was overturned and he was released from prison before
a decision was reached.  Id.  As a result, the court held that
the plaintiff's claims for injunctive relief were rendered moot
by his release and the "capable of repetition" exception did not
apply.  Id. at 313-14.  Specifically, the court stated, "as a
result of his acquittal, we simply cannot conclude that there is
a reasonable likelihood that he would be subjected to the same
conduct."  Id. at 314.

Finally, in the seminal case of Weinstein, the
plaintiff continued to challenge certain procedures of the North
Carolina Board of Parole after he was released from parole.
Weinstein, 423 U.S. at 147-48.  The Supreme Court explained that
the plaintiff had no interest in the procedures used by the
North Carolina Board of Parole after the date that he was
released from supervised parole.  Id. at 148.  After laying out
the two-part test of the "capable of repetition" doctrine, the
Court held that "there is no demonstrated probability" that the
plaintiff would again be under the supervision of the North
Carolina Board of Parole.  Id. at 149.

As Plaintiff has pled guilty, been transferred out of
the PPS, and is not subject to additional incarceration within
the PPS, it would be mere speculation to hold that Plaintiff
will be incarcerated in the PPS again.  Thus, much like the

12

Plaintiff in Delie, the capable of repetition exception will not
apply here.  Delie, 257 F.3d at 312.  Accordingly, Plaintiff's
claims for injunctive and declaratory relief are rendered moot.
As each of Plaintiff's claims also raise a claim for monetary
damages, the Court will still address the defendants' motions
for summary judgment.[9]

IV.     ARAMARK DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

        Aramark has moved for summary judgment on Counts II,
III, and IV.  In Counts II and III, Plaintiff alleges violations
of the First and Fourteenth Amendments pursuant to 42. U.S.C. §
1983.  In order to address Counts II and III, the Court must
first determine whether Aramark can be considered a state actor
for the purposes of constitutional protections.[10]  The Court will
separately address Plaintiff's RLUIPA claim.

_____

[9]      The Court notes that in Aramark Defendants'
supplemental filing, they do not argue that Plaintiff's claims
would be mooted in full.  Aramark Defendants only assert that
Plaintiff's claims for injunctive and declaratory relief would
be rendered moot.

[10]     To establish a section 1983 claim, a plaintiff "must
demonstrate a violation of a right secured by the Constitution
and the laws of the United States [and] that the alleged
deprivation was committed by a person acting under the color of
state law." Kneipp, 95 F.3d at 1204.  Section 1983 permits
plaintiffs to sue private parties as long as such parties acted
under color of state law.  Thus, the threshold inquiry is to

A.   <u>State Action Analysis</u>

Aramark is a private corporation, not a government entity.  As such, Aramark can only be liable for constitutional violations under § 1983 if it can fairly be considered to act under color of state law.  See <u>Kneipp v. Tedder</u>, 95 F.3d 1199, 1204 (3d Cir. 1996); <u>see also</u> <u>Pugh v. Downs</u>, 641 F. Supp. 2d 468, 472 (E.D. Pa. 2009) (Robreno, J.).  There are several judicially created tests to determine whether a party acts under color of state law.  The four most commonly applied tests are: (1) the close nexus test, <u>see</u> <u>Blum v. Yaretsky</u>, 457 U.S. 991, 1004 (1982), (2) the symbiotic relationship test, <u>see</u> <u>Burton v. Wilmington Parking Auth.</u>, 365 U.S. 715, 725 (1961),(3) the joint action test, <u>see</u> <u>Lugar v. Edmondson Oil Co</u>., 457 U.S. 922, 941 (1982), and (4) the public function test, <u>see</u> <u>Terry v. Adams</u>, 345 U.S. 461, 468-470 (1953).  <u>See also</u> <u>Pugh</u>, 641 F. Supp. 2d at 472.

Citing <u>Evans v. Newtown</u>, 382 U.S. 266 (1966), Plaintiff argues that Aramark is a state actor because Aramark performs a traditionally exclusive government function by providing food services to inmates.  Pl.'s Resp. Aramark Defs.'

---

determine whether Aramark and Flaherty acted under color of state law.

Mot. Summ. J. 11.  Aramark contends that as a private company it merely contracts with the state to provide food.  Aramark Defs.' Mot. Summ. J. 8.  According to Aramark, the traditional function of deciding what meals individual prisoners receive remains with the City.  Id. at 12.  Citing to several cases outside of the Third Circuit, Aramark argues that it is "well-established case law . . . that Aramark is not a state actor."  Aramark Defs.' Resp. Pl.'s Resp. 4, ECF 72.

        Courts in this district, however, have held that Aramark can be considered to act under color of state law by taking on the traditionally exclusive government function of providing food services to prisoners.  See Williams v. Giorla, No. 11-6565, 2013 WL 3982348, at *5-6 (E.D. Pa. Aug. 2, 2013); McCullum v. City of Philadelphia, No. 98-5858, 1999 WL 493696, at *2-3 (E.D. Pa. July 13, 1999) ("The court finds that Aramark acted under color of state law for purposes of § 1983 by performing the traditional government function of providing food service at a prison."); Talley v. Amarker, No. 95-7284, 1996 WL 528867, at *2-4 (E.D. Pa. Mar.7, 1996); see also Jubeh v. Dart, No. 11-3873, 2011 WL 6010267, at *2 (N.D. Ill. Nov. 29, 2011) (listing courts that have held that Aramark can be considered a state actor).[11]  Aramark does not dispute that it has contracted

_____

[11]      Aramark's current counsel, Thomas J. Mckenzie, was counsel of record for Aramark in Williams where the court held

with the City to provide food services in the PPS.  As a result, Aramark can fairly be considered to have acted under color of law because it performs a function that is a traditionally exclusive government function, that of providing meals to prison inmates.

Accordingly, the Court holds that Aramark acted under color of state law and can be sued under § 1983.

B.   Plaintiff's First Amendment Claims

Plaintiff claims that Walter Flaherty[12] (in his official and individual capacities) and Aramark violated Plaintiff's free exercise rights under the First Amendment by

_____

that "Aramark was acting under color of state law in the preparation of food for inmates."  Williams, 2013 WL 3982348, at *5.

Regrettably, counsel in the present case did not bring this adverse case law to the Court's attention, even to distinguish it.  Counsel should review the Pennsylvania Rules of Professional Conduct, notably Rule 3.3(a)(2) which states that "[a] lawyer shall not knowingly: fail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel."

[12]     Flaherty is the Regional Manager of Aramark Correctional Services at the PPS.

failing to consistently provide Plaintiff with vegetarian meals. Compl. ¶ 83; Pl.'s Resp. Aramark Defs.' Mot. Summ. J. 7.[13]

### 1. Claims Against Aramark

In order for an entity such as Aramark to be liable under § 1983, a plaintiff must provide evidence that the alleged constitutional deprivations resulted from the defendant's official policy or custom. Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 583 (3d Cir. 2003). Under § 1983, such an entity cannot be held liable under the theory of respondeat superior. Id. Moreover, Aramark can only be held liable under § 1983 if one of its policies or customs was the "moving force" behind the alleged constitutional violation. City of Canton, Ohio v. Harris, 489 U.S. 378, 379 (1989); Murray v. Allen, No. 10-1014, 2010 WL 4159261, at *3 (E.D. Pa. Oct. 21, 2010); see also McCullum v. City Of Philadelphia, No. 98-5858, 2000 WL 329203, at *1 (E.D. Pa. Mar. 23, 2000) ("[Under § 1983,] "a policy or custom includes practices that are so permanent and

---

[13] Plaintiff's response indicated that Plaintiff is not pursuing a claim under the First Amendment free exercise clause for an alleged failure by Aramark to serve Halal meat. Pl.'s Resp. Aramark Defs.' Mot. Summ. J. 7. Accordingly, the Court will not review whether Aramark's failure to serve Halal meat constitutes a violation Plaintiff's free exercise rights.

well established as to constitute a custom or usage with the force of law.").[14]

In McCullum, the prisoner-plaintiff claimed that Aramark was liable for constitutional violations under § 1983 because an Aramark employee attacked him.  McCullum, 2000 WL 329203, at *1.  The district court dismissed the plaintiff's claim because the plaintiff failed to show that the Aramark employee acted pursuant to any of Aramark's policies or customs. Id. at *2.  Although the plaintiff's complaint alleged that Aramark "as a matter of policy or practice" failed to train, supervise, and discipline its employees, the court concluded that the plaintiff failed to present evidence showing that any Aramark policy was the cause.  Id. at *1.

Presently, Plaintiff contends that Aramark violated his free exercise rights by failing, on multiple occasions, to provide him with vegetarian meals.  Compl. ¶¶ 30-33. Additionally, Plaintiff alleges that an Aramark employee, on one occasion, told him to remove non-Halal meat from a breakfast tray and "eat the rest."  Compl. ¶ 35.  In both of these claims, however, Plaintiff has failed to present any evidence showing

---

[14]      An "official policy or custom" may be set by lawmakers or by those "whose edicts or acts may be fairly said to represent official policy."  Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978).  The Court notes that Plaintiff's allegations do not involve the edicts or acts of a senior policy maker at Aramark.

that an Aramark policy or custom was the cause of these alleged incidents.

First, the remark by an unidentified Aramark employee, like the single attack in McCullum, amounts to an isolated event.  Plaintiff has presented no evidence suggesting that the unnamed Aramark employee acted pursuant to any Aramark policy or custom.  See City of Canton, 489 U.S. at 379.  Therefore, the Court finds that this single event does not trigger liability under § 1983.

Aramark's alleged failure to serve Plaintiff several vegetarian meals, however, poses a more complex issue. Plaintiff claims that Aramark failed to serve him vegetarian breakfast meals on multiple occasions in October 2010, any vegetarian meals from January 2, 2012, to January 9, 2012,[15] and any vegetarian meals from December 20, 2012, to January 1, 2013. Compl. ¶ 31; Pl. Dep. 40:16-22.  According to Plaintiff, Aramark's failure to serve at least 40 vegetarian meals amounts to a policy.[16]  Pl.'s Resp. Aramark Defs.' Mot. Summ. J. 13.

---

[15]     According to Plaintiff, he was transferred from CFCF to PICC on January 2, 2012 but his religious alternative meals "did not follow."  Pl.'s Resp. Aramark Defs.' Mot. Summ. J. Ex. 8, Sutton Mem. 104.

[16]     Plaintiff has inconsistently approximated the amount of times he was not served the proper religious alternative meal.  For example, Plaintiff stated in his deposition that he was not served vegetarian meals "maybe 20 times," but "it [could have] been more . . . ."  Pl. Dep. 48: 11-17.  In his response

Aramark contends that none of its policies or customs can be considered the moving force behind these missed meals. Aramark Defs.' Mot. Summ. J. 8.  On the contrary, Aramark asserts that it has policies in place to ensure that prisoners receive their appropriate meals.  For example, "if a prisoner does not receive the appropriate meal that the City of Philadelphia instructs [Aramark] to serve, that prisoner may reject the meal and a meal which is compliant with that prisoner's diet menu will be provided . . . ."  Aramark Defs.' Mot. Summ. J., Ex 7, Flaherty Aff. ¶ 5.  Aramark also argues that Plaintiff's missed meals amount to a de minimis burden on his free exercise rights.  Aramark Defs.' Mot. Summ. J. 13.  To support its argument, Aramark asserts that since the Plaintiff initially requested a religious alternative diet, he has been served the correct meal over 99% of the time.  Id. at 12 - 13.

Reviewing the evidence in the light most favorable to Plaintiff, the Court finds that Plaintiff has failed to present sufficient evidence that could lead a reasonable jury to conclude that Aramark's failure to occasionally provide vegetarian meals was the result of any of Aramark's policies or customs.  The missed meals from January 2, 2012, to January 9,

---

to Aramark's Motion for Summary Judgment, Plaintiff states that he was denied vegetarian meals at least 40 times.  Pl.'s Resp. Aramark Defs.' Mot. Summ. J. 13.

2012, appear to be an administrative error flowing from Plaintiff's transfer from CFCF to PICC.  Although Plaintiff alleges that he was not served religious alternative breakfasts in October 2010, and any vegetarian meals from December 20, 2012 to January 1, 2013, he fails to show how this indicates Aramark itself had a policy or custom which caused this alleged failure.[17]  Furthermore, Plaintiff has not responded to Aramark's contention that it served the correct vegetarian meals to Plaintiff over 99% of the time.  Therefore, Aramark has shown that it has a policy of providing Plaintiff with the proper meals.  Accordingly, the Court will grant Aramark's Motion for Summary Judgment with regard to Plaintiff's free exercise claims against Aramark.

### 2.   Claim Against Flaherty in Official Capacity

Plaintiff sued Flaherty in both his official and individual capacities.  Plaintiff's official capacity suit against Flaherty, however, is the equivalent of a suit against Aramark.  See Will v. Mich. Dep't of State Police, 491 U.S. 58,

---

[17]    On January 1, 2013, Plaintiff told the prison's chaplain that he was not being served vegetarian meals.  Pl. Dep. 42:10-23.  Aramark's prompt resumption of vegetarian meal service on the same day that it was informed of the error strongly suggests that it is Aramark's policy and custom to serve inmates the correct meals.

71 (1989) (A suit against an individual in his or her official capacity "is not a suit against the official, but rather a suit against the official's office."); Kentucky v. Graham, 473 U.S. 159, 165 (1985). ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'") (quoting Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 n.55 (1978)). Other courts in this district have consistently held that official capacity claims against employees of private entities acting under color of state law are merely claims against the employer. See, e.g., DeJesus v. Aramark Food Serv., Inc., No. 13-5734, 2014 WL 144732, at *4 (E.D. Pa. Jan. 14, 2014) ("DeJesus's claims against Kramer in his official capacity pursuant to § 1983 will be dismissed with prejudice because these claims are viewed as claims against Aramark."); see also Clarke v. Whitney, 907 F.Supp. 893, 895 (E.D. Pa. 1995) ("[A] suit against a defendant in his or her official capacity is simply another way to sue the defendant's employing entity.").

In this regard, Plaintiff's free exercise claim against Flaherty in his official capacity is no different than a suit against Aramark. Will, 491 U.S. at 71. Accordingly, the Court will grant Flaherty's Motion for Summary Judgment with regard to Plaintiff's free exercise claims under Count III.

3.   Claim Against Flaherty in Individual Capacity


To establish individual liability under § 1983 a plaintiff must show that the individual defendant was personally involved in the alleged constitutional violations.  Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).  Personal involvement can be established by showing that the defendant actually participated in the alleged violation or had knowledge and acquiesced in the violation.  Id.  Plaintiff is required to prove personal involvement with "appropriate particularity." Id.

> Private persons, jointly engaged with state officials in the prohibited action, are acting "under color" of law for purposes of the statute. To act "under color" of law does not require that the accused be an officer of the State. It is enough that he is a willful participant in joint activity with the State or its agents.

Adickes v. S. H. Kress & Co., 398 U.S. 144, 152 (1970) (citation and some quotation marks omitted).

Flaherty will not be held liable in his individual capacity under § 1983 because Plaintiff has not offered sufficient evidence for a reasonable jury to conclude that Flaherty was personally involved in disrupting the service of vegetarian meals.  Indeed, Plaintiff has not presented any evidence showing that Flaherty personally participated in the alleged violation of Plaintiff's free exercise rights or had

23

actual knowledge that Plaintiff was not being served his vegetarian meals.

Plaintiff contends that he submitted grievances to Flaherty describing the alleged First Amendment violations and speculates that Flaherty received those grievances.  Compl. ¶ 83; Pl. Dep. 54:1-8.  The Third Circuit, however, has held that merely receiving grievances is generally insufficient to establish actual knowledge.  <u>Rode</u>, 845 F.2d at 1208; <u>Carter v. Smith</u>, No. 08-279, 2009 WL 3088428, at *5 (E.D. Pa. Sept. 22, 2009) ("[A]s a general matter the [Third Circuit] has been reluctant to assign liability to prison officials based solely on the denial of prisoner grievances.").  Plaintiff, at most, contends that because Flaherty is the Regional Manager of Aramark at the PPS, he is personally involved in any constitutional violation committed by Aramark employees working there.  Such reasoning lacks the appropriate particularity that is required to establish personal involvement.  <u>See</u> <u>Rode</u>, 845 F.2d at 1207.  Accordingly, the Court will grant Flaherty's Motion for Summary Judgment with regard to Plaintiff's free exercise claims under Count III.

C.    Fourteenth Amendment Claims

        Plaintiff claims that Aramark and Flaherty (in his
official and individual capacities) violated rights under the
Equal Protection Clause of the Fourteenth Amendment.  Pl.'s
Resp. Aramark Defs.' Mot. Summ. J. 14.  The basis of Plaintiff's
claim is that the Aramark Defendants maintained or had actual
knowledge and acquiesced in a discriminatory policy by providing
Jewish inmates with religious alternative meals containing meat
while providing Muslim inmates with a religious alternative diet
that did not contain meat (despite requests for meat from those
inmates).  Id.

        1.    Claim Against Aramark


        To establish a violation of the Equal Protection
Clause a plaintiff must show that he or she "received different
treatment from that received by other individuals similarly
situated." Suber v. Guinta, 927 F. Supp. 2d 184, 201 (E.D. Pa.
2013) (quoting Andrews v. Philadelphia, 895 F.2d 1469, 1478 (3d
Cir.1990)).  Additionally, a plaintiff must show that the
defendant was motivated by a discriminatory intent.  Id.   A
"[d]iscriminatory intent 'implies that the decision-maker . . .
selected or reaffirmed a particular course of action at least in
part because of, not merely in spite of, its adverse effects

                              25

upon an identifiable group." <u>Antonelli v. New Jersey</u>, 419 F.3d 267, 274 (3d Cir. 2005) (quoting <u>Personnel Adm'r of Mass. v. Feeney</u>, 442 U.S. 256, 279 (1979)) (internal quotations omitted); <u>see also</u> <u>Freeman v. Arpaio</u>, 125 F.3d 732, 737 (9th Cir. 1997) ("To succeed on an equal protection claim, a plaintiff in a section 1983 claim must show that officials intentionally acted in a discriminatory manner.").

The facts giving rise to Plaintiff's equal protection claim are not novel.  For example, in <u>Williams v. Morton</u>, 343 F.3d 212 (3d Cir. 2003), a Muslim prisoner claimed that his equal protection rights were violated because the prison allegedly provided Jewish inmates with kosher meals containing meat, but refused to provide Muslim prisoners with religious meals containing meat.  <u>Id.</u> at 221. The Third Circuit dismissed the equal protection claim because the kosher meals did not actually contain meat.  <u>Id.</u> at 221-22   In this regard, the plaintiff was not treated differently from Jewish inmates.  <u>Id.</u> at 222.  Nonetheless, the Third Circuit noted that if the kosher meals contained meat, then the four-part balancing test set forth in <u>Turner v. Safley</u>, 482 U.S. 78 (1987), would be applicable to determine the constitutionality of the prison's religious alternative meal policy.  <u>Id.</u> at 221 ("<u>Turner</u> is equally applicable to Prisoners' equal protection claims.").

In a more recent case, the Ninth Circuit, handling an almost identical equal protection claim from a Muslim prisoner, held that summary judgment was inappropriate where the lower court did not analyze the prison's justification for not serving Muslim prisoners meat under the four-part Turner analysis. Shakur v. Schriro, 514 F.3d 878, 891 (9th Cir. 2008).  In Shakur, the Ninth Circuit held that the factual record was not sufficiently developed to determine whether the disparate treatment among Muslim and Jewish prisoners was reasonably related to legitimate penological interests.  Id. at 891-92, 893.  The only justification offered by the defendants was cost considerations.  Id. at 891-92.  The court remanded the case to further develop the factual record.  Id. at 892.

Finally, in De Hart v. Horn, 227 F.3d 47 (3d Cir. 2007), a Buddhist prisoner claimed that his equal protection rights were violated because the prison accommodated the religious dietary practices of Jewish inmates but refused to accommodate Buddhist dietary practices.  De Hart, 227 F.3d at 61.  Notwithstanding the defendant's argument that the record was "devoid of any evidence of a discriminatory intent," the Third Circuit concluded that a "fair inference could be drawn from the record . . . that the relevant disparity in treatment was the result of deliberate choice."  Id. at n.10.  The court went on to remand the case for further factual findings because

the defendants failed to offer any legitimate penological justifications for making distinctions among religious prisoners.  Id. at 61.

    Unlike the cases cited above, Aramark does not have complete authority to decide what types of meals are served at the City's prisons.  Aramark Defs.' Mot. Summ. J. 21.  The City's chaplain is responsible for determining which inmates are entitled to receive religious diets and the city determines the content of those meals.  Id.  Additionally, Aramark contends that under the terms of its contract with the City, it cannot unilaterally change an inmate's diet or add new food items to the prison's meal plans without the City's approval.  Id.  In light of its contractual obligations with the City, Aramark argues that it cannot and does not possess a discriminatory intent.  Id.

    Aramark cannot avoid constitutional obligations, however, merely by acting pursuant to a contract with the City. See, e.g., Verdi v. City of Phila., 553 F.Supp. 334, 335-36 (E.D. Pa. Dec. 22, 1982) (citing Lugar, 457 U.S. at 941-42).  In Verdi, the plaintiff landowner sued the City of Philadelphia and Liberty (a private demolition corporation) under § 1983 for violating his due process rights under the Fifth and Fourteenth Amendments by demolishing his parent's property without notice. Id. at 336.  Liberty argued that it did not act under color of

28

state law and could not be liable for constitutional violations under § 1983 because it did not exercise any decision-making power and was simply following the City's instructions.  Id. The Court held, applying Lugar, that even though Liberty was following the City's policies, it was still a joint participant in seizing the plaintiff's property.  Id. at 337.  As a result, the plaintiff was considered a state actor and could be liable for violations of the plaintiff's due process rights under the Fourteenth Amendment.  Id.; see also Lugar, 457 U.S. at 941-42.

In the case sub judice, Plaintiff has presented sufficient evidence for a reasonable jury to find that Aramark was jointly responsible for maintaining a discriminatory religious alternative meal system and possessed a discriminatory intent.  First, unlike the kosher meals in Williams, Aramark concedes that its kosher meals occasionally contain meat. Aramark Defs.' Mot. Summ. J. 21.  Plaintiff can thus show that he is being treated differently than similarly situated Jewish inmates.

Second, Plaintiff has produced a series of emails between Chaplain Taylor and Flaherty to show that Aramark was aware that Muslim inmates were being treated differently.  Pl.'s Resp. Aramark Defs.' Mot. Summ., Exs. 4, 5, 6, Chaplain E-

Mails.[18]  Chaplain Taylor explains to Flaherty that Muslim
inmates are complaining that the kosher diet for Jewish inmates
contains meat, but the religious alternative diet for Muslims
does not.  Id.  As a result, Plaintiff claims that Aramark was,
at a minimum, aware of the discriminatory policy and acquiesced
in maintaining it.  Pl.'s Resp. Aramark Defs.' Mot. Summ. J.
14.

        Aramark's discriminatory intent can be inferred from
its awareness of the religious meal system's effects on Muslim
inmates and its apparent indifference to that disparate
treatment.  Aramark has failed to show that it took any measures
to address the concerns of Muslim inmates with the City's prison
system.  Accordingly, a reasonable jury could find that Aramark
was a willful participant in maintaining a religious alternative
meal system that violates Plaintiff's equal protection rights.

        Finally, Aramark fails to point to evidence or make
arguments that would enable the Court to perform the Turner
analysis.  See Williams, 343 F.3d at 221 (remanding to district

---

[18]         In one email, Taylor describes Plaintiff's
dissatisfaction with the vegetarian diet and asks, "if [they]
can add eggs, peanut butter, fish, etc. to the non-meat diet?"
Pl.'s Resp. Aramark Defs.' Mot. Summ. J., Ex. 4.  Although no
responses from Flaherty were provided, Plaintiff contends that
these emails show that Aramark participated in developing the
discriminatory meal policy.  Pl.'s Resp. Aramark Defs.' Mot.
Summ. J. 14-15.

court where Turner analysis had not been performed).
Accordingly, the Court will deny Aramark's Motion for Summary
Judgment with regard to Plaintiff's equal protection claim
against Aramark.

### 2.   Claim Against Flaherty in Official Capacity

As discussed above, page 23 supra, any claim against
Flaherty in his official capacity is deemed a claim against
Aramark and thus will be dismissed as merely repetitive of that
claim.

### 3.   Claim Against Flaherty in Individual Capacity

To establish individual liability under § 1983, a
plaintiff must show that the individual defendant was personally
involved in the alleged constitutional violations.  Rode, 845
F.2d at 1207.  A plaintiff can establish personal involvement by
showing that a defendant had actual knowledge and acquiesced to
a constitutional violation. Stoneking v. Bradford Area Sch.
Dist., 882 F.2d 720, 725 (3d Cir. 1989); see also Pollock v.
City of Philadelphia, No. 06-4089, 2008 WL 3457043 (E.D. Pa.
Aug. 8, 2008).

As discussed above, Plaintiff must prove purposeful discrimination. Thomas v. Cianfrani, No. 01-3096, 2009 WL 1704471 (E.D. Pa. June 17, 2009). Because it is often difficult for plaintiffs to produce evidence of discriminatory intent, courts often infer such intent from the totality of the circumstances. See, e.g., Meadows v. Atl. Richfield Co., No. 84-0711, 1986 WL 9896 (E.D. Pa. Sept. 10, 1986). Moreover, purposeful discrimination is often found when actions are taken only with respect to a particular class of people. See, e.g., Indus. Design Serv. Co. v. Upper Gwynedd Twp., No. 91-7621, 1993 WL 19756 (E.D. Pa. Jan. 27, 1993) (citing Snowden v. Hughes, 321 U.S. 1, 8 (1944)).

Flaherty contends that he cannot be held liable because he was not personally involved in any of Plaintiff's alleged constitutional violations. Aramark Defs.' Mot. Summ. J. 18. According to Flaherty, "the sole basis for Plaintiffs claim is that Walter Flaherty is in charge of ARAMARK's food service at the prison." Id. at 18-19.

Plaintiff, on the other hand, argues that Flaherty's discriminatory intent can be inferred from his apparent acquiescence in a policy that facially discriminated against Muslim inmates. Pl.'s Resp. Aramark Defs.' Mot. Summ. J. 14-15. According to Plaintiff, Flaherty was aware of the policy and its effects on Muslim inmates, but did nothing to stop it.

Plaintiff's proffered evidence includes emails from Chaplain Taylor to Flaherty discussing the policy and its effects on Muslim inmates.  Pl.'s Resp. Aramark Defs.' Mot. Summ. J. Ex. 4, 5, 6.  In one email, Chaplain Taylor suggests to Flaherty that another option should be added in lieu of the vegetarian diet to accommodate Muslim inmates.  Pl.'s  Resp. Aramark Defs.' Mot. Summ. J. Ex. 4.  In light of Flaherty's apparent inaction, Plaintiff claims that Flaherty was personally involved in maintaining a discriminatory policy that violated his equal protection rights.

Flaherty is incorrect to state that "the sole basis for Plaintiffs claim is that Walter Flaherty is in charge of ARAMARK's food service at the prison."  Id. at 18-19.  Plaintiff has presented sufficient evidence to show that Flaherty was aware of how the religious alternative meal policy affected Muslim inmates.  Additionally the email contained in Exhibit 4, wherein Chaplain Taylor asks about the possibility of creating an additional diet for Muslims, is evidence such that a reasonable juror could find that Flaherty has policy-making authority within Aramark.

Furthermore, Flaherty did not present any evidence showing that he took actions to address the religious alternative meal policy.  Flaherty's intent to discriminate can be inferred from his apparent deliberate indifference.  For

these reasons, a reasonable jury could find that Flaherty's
apparent indifference evidences intent to discriminate and that
he acquiesced in a discriminatory policy.  See Rode, 845 F.2d
1207.  Accordingly, the Court will deny Flaherty's Motion for
Summary Judgment with regard to Plaintiff's equal protection
claim against him in his individual capacity.


D.   RLUIPA Claims Against Aramark Defendants


        Plaintiff claims that the Aramark Defendants violated
RLUIPA by failing to serve him vegetarian meals on several
occasions.  Pl.'s Resp. City Defs.' Mot. Partial Summ. J. 5.  As
a result, Plaintiff argues that he was forced to choose between
violating his religious beliefs and not eating.  Pl. Dep. 42:10-
23; Pl.'s Resp. Aramark Mot. Summ. J., Ex. 8, Sutton Mem. 104.


    1.   Claim Against Aramark


        Section 3 of RLUIPA states that "[n]o government shall
impose a substantial burden on the religious exercise of a
person residing in or confined to an institution . . . ."  42
U.S.C. § 2000cc-1(a).  "A plaintiff-inmate bears the burden to
show that a prison institution's policy or official practice has
substantially burdened the practice of that inmate's religion."

Washington v. Klem, 497 F.3d 272, 277-78 (3d Cir. 2007).
According to the Third Circuit, a substantial burden exists
where an inmate "is forced to choose between following precepts
of his religion and forfeiting benefits otherwise generally
available to other inmates versus abandoning one of the precepts
of his religion in order to receive a benefit . . . ." Id. at
280.  A substantial burden also exists where "the government
puts substantial pressure on an adherent to substantially modify
his behavior and to violate his beliefs." Id.  Citing to
RLUIPA's legislative history, the Third Circuit has explained
that what constitutes a "substantial burden" should be defined
broadly.  Id.

        Here, the issue is whether Aramark's failure to serve
Plaintiff his vegetarian diet on multiple occasions amounts to a
"substantial burden" and whether this is pursuant to a "policy
or official practice."  The Third Circuit has observed that
prisoners have a "constitutional right not to be forced into a
Hobson's choice of eating food that offends one's religious
beliefs, or eating very little or not at all." Norwood v.
Strada, 249 F. App'x 269, 272 (3d Cir. 2007) (non-precedential);
see also Jupiter v. Johnson, No. 10-01968, 2011 WL 4527803 (M.D.
Pa. Apr. 26, 2011) ("A prisoner who is consistently not provided
meals in accordance with his religious beliefs is substantially
burdened in the exercise of his religion.").

In Norwood, the prisoner-plaintiff was not served his appropriate halal diet for three days during an emergency prison lockdown.  Id. at 270 n.1.  The district court granted the defendant's motion for summary judgment and held that the brief denial of religious meals did not substantially burden the plaintiff's religion.  Id. at 270-71.  The Third Circuit agreed and concluded that the three day time period, especially under the lock down circumstance, constituted "a mere de minimis intrusion."  Id. at 272.

As discussed above, it remains unclear exactly how many times Plaintiff was not served his vegetarian meals. Plaintiff claims that he was not served several breakfasts in October 2010, any vegetarian meals from January 2, 2012, to January 9, 2012, and any vegetarian meals from December 20, 2012, to January 1, 2013.  Compl. ¶ 31; Pl. Dep. 40:16-22. Specifically, during the first and last week in 2012, Plaintiff argues that he was forced to make a "Hobson's choice" between eating and violating his religious beliefs.  Pl. Dep. 42:10-23; Pl.'s Resp. Aramark Mot. Summ. J., Ex. 8, Sutton Mem. 104.  On the other hand, Aramark contends that Plaintiff's missed meals constitute a de minimis intrusion, not a substantial burden. Aramark Defs.' Mot. Summ. J. 19.  To support this argument, Aramark points to several cases where courts have held that the failure to serve religious meals, even up to seven days, is not

a substantial burden on an inmate's religious practice. Id. at 20.

Unlike the emergency lock-down situation in Norwood, Aramark has failed to explain why the vegetarian meals were not served. Aramark has, however, shown it has policies in place to ensure that prisoners receive the appropriate meals. See Flaherty Aff. ¶ 5. Furthermore, when Plaintiff has raised the issue of a stoppage in meal service, the evidence indicates Aramark has corrected it promptly. Pl. Dep. 72:24-74:4.

Even if Plaintiff could prove that the stoppage in vegetarian meals presented a "substantial burden," he has failed to present evidence that this is due to a "policy or official practice" of Aramark. See Washington, 497 F.3d at 277-78. To the contrary, the available evidence indicates that Aramark has a practice of ensuring the proper meals are delivered and policies in place to effect that practice. Accordingly, the Court will grant Aramark's Motion for Summary Judgment as to this claim, and Plaintiff's RLUIPA claim against Aramark will be dismissed.

2.   Claim Against Flaherty in Individual Capacity

RLUIPA allows plaintiffs to "obtain appropriate relief against a government."  42 U.S.C. § 2000cc-2.  Government is defined as "(i) a State, county, municipality, or other governmental entity created under the authority of a State; (ii) any branch, department, agency, instrumentality, or official of an entity listed in clause (i); and (ii) any other person acting under color of State law[.]"  Id. § 2000cc-5(4)(A).  The Third Circuit has held that RLUIPA does not apply to government employees in their individual capacities.  Sharp v. Johnson, 669 F.3d 144, 153 (3d Cir. 2012), cert. denied, 133 S. Ct. 41 (2012).

In Sharp, the Third Circuit explained that Congress enacted RLUIPA pursuant to its spending power.  Id. at 154.  In doing so, Congress attached conditions to the receipt of federal funds.  Id.  The Third Circuit, however, drew a distinction between state employees and the state, which is the actual recipient of federal funds.  Id. at 155.  Thus, the Third Circuit concluded that state officials cannot be held liable under RLUIPA in their individual capacities because they are not a party to the "contract" with the federal government.  Id. at 153.  Applying Sharp to the instant matter, Flaherty, like the

state employee in <u>Sharp</u>, cannot be held liable under RLUIPA in his individual capacity.

Accordingly, the Court will grant the Aramark Defendants' Motion for Summary Judgment with regard to Plaintiff's RLUIPA claim against Flaherty in his individual capacity.

### 3.   <u>Claim Against Flaherty in Official Capacity</u>

As discussed above, page 23 <u>supra</u>, Plaintiff has failed to present any evidence showing that Flaherty caused the service of vegetarian meals to be disrupted.  Accordingly, the Court will grant Aramark's Motion for Summary Judgment with regard to Plaintiff's RLUIPA claim against Flaherty in his official capacity.

**V.     CITY DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

In his response to the City Defendants' Motion for Partial Summary Judgment, Plaintiff states that he is withdrawing his negligent and intentional infliction of emotional distress claims, conspiracy claims, and claims against Defendants Giorla and Delaney.[19]  Pl.'s Resp. City Defs.' Mot. Partial Summ. J. 4.  As a result, the remaining claims against the City Defendants include only the First Amendment claims in Count III, RLUIPA claim in Count IV, and Fourteenth Amendment claim in Count II.  City Defendants have moved for summary judgment on the First Amendment Claims and RLUIPA Claim, not the Fourteenth Amendment Claim.

A.     First Amendment Claims

Plaintiff claims that the City and individual defendants Chaplain Taylor, Sergeant Gamgemi, and Sergeant Pote violated his free exercise rights under the First Amendment. Pl.'s Resp. City Defendants Mot. Partial Summ. J. 8-9.

─────────────────

[19]     "Plaintiff is also withdrawing his negligent and intentional infliction of emotion [sic] distress claims. Plaintiff also is withdrawing his claims against Defendants Giorla and Delaney and his conspiracy claims."  Pl.'s Resp. City Defs.' Mot. Partial Summ. J. 4.

Specifically, Plaintiff claims his free exercise rights were violated by the City and Chaplain Taylor for their failure to provide him with vegetarian meals on several occasions and by Sergeant Gamgemi and Sergeant Pote for their attempts to suppress his hunger strike.  Id.

### 1.   Claims Against the City

As discussed above, page 17 supra , the City cannot be held liable under § 1983 unless its policies or customs caused Plaintiff's alleged injuries. See Monell, 436 U.S. at 694. Accordingly, Plaintiff must show that the City's employees were acting pursuant to an official policy or custom when they violated Plaintiff's free exercise rights.

With regard to Plaintiff's missed vegetarian meals, Plaintiff has failed to show that any of the City's policies or customs caused Plaintiff to miss his vegetarian meals.  The evidence shows that Chaplain Taylor—an employee of the City—is tasked with preparing a list, for Aramark, of inmates who are entitled to receive religious alternative diets.  Aramark is then responsible for preparing the appropriate meals for each inmate.

Plaintiff claims that there were occasional lapses in this system.  Specifically, Plaintiff claims that he did not

receive meals on "at least 40 occasions," including the first and last weeks in 2012.  Pl.'s Resp. City Defs.' Mot. Partial Summ. J. 8-9.  As noted above, it is unclear exactly why the service of Plaintiff's vegetarian meals was disrupted. Nonetheless, Plaintiff has not provided any evidence, even when taken in the light most favorable to Plaintiff, which shows that any of these disruptions flowed from any of the City's policies, customs, or practices.

The lapse in service when Plaintiff was transferred from CFCF to PICC—the first week in 2012—appears to be an administrative error.  Although it is unclear why the vegetarian meal service was disrupted in the last week of 2012, the service immediately resumed after Plaintiff complained to Chaplain Taylor.  Pl. Dep. 43:2-9.  Chaplain Taylor's quick resolution of the problem and the immediate resumption of vegetarian meal service demonstrate the City's commitment to ensuring that inmates receive the appropriate meals.

Plaintiff also claims that his free exercise rights were violated by the City when Sergeant Gamgemi and Sergeant Pote allegedly attempted to suppress Plaintiff's hunger strike. Pl.'s Resp. Aramark Defs.' Mot. Summ. J. 10.  Plaintiff commenced a hunger strike in May because he was dissatisfied with the contents of his vegetarian meals and believed that the vegetarian meals violated his equal protection rights.  Id. at

42

6.  Plaintiff alleges that Sergeant Gamgemi violated his free exercise rights by bringing him to the prion's mental health unit in the early morning hours of May 12, 2011.  Compl. ¶ 50. Likewise, Plaintiff alleges that Sergeant Pote violated his free exercise rights by giving him a regular breakfast tray and advising him to eat or be brought to the RHU.  Id. at ¶ 51. Notably, Sergeant Pote left Plaintiff's cell after Plaintiff drank some orange juice, Pl. Dep. 71:18-22, and Plaintiff was never brought to the RHU.  Id. at 72:1.

Regardless of whether Sergeant Gamgemi or Sergeant Pote's actions violated any of Plaintiff's constitutional rights, Plaintiff has failed to present any evidence showing that Sergeant Gamgemi and Sergeant Pote acted pursuant to a City policy or custom.  As a result, the City cannot be held liable for the isolated actions of either Sergeant Gamgemi and Sergeant Pote.

Accordingly, the Court will grant the City Defendants' Motion for Summary Judgment with regard to Plaintiff's First Amendment claims against the City.

2.   <u>Claims Against All Defendants in Official</u>
     <u>Capacities</u>

Plaintiff's official capacity claims against Sergeant
Gamgemi, Sergeant Pote, and Chaplain Taylor are the equivalent
of claims against the City.  See <u>Will</u>, 491 U.S. at 71 (A suit
against an individual in his or her official capacity "is not a
suit against the official, but rather a suit against the
official's office."); <u>Kentucky</u>, 473 U.S. at 165 ("Official-
capacity suits . . . 'generally represent only another way of
pleading an action against an entity of which an officer is an
agent.'") (quoting <u>Monell</u>, 436 U.S. at 690 n. 55; <u>see also Duffy
v. Cnty. of Bucks</u>, 7 F. Supp. 2d 569, 578 (E.D. Pa. 1998)
(noting that claims against county correctional officers in
their official capacities were effectively claims against the
county).  Plaintiff's free exercise claims against Sergeant
Gamgemi, Sergeant Pote, and Chaplain Taylor in their official
capacity are no different than suits against the City.  <u>Will</u>,
491 U.S. at 71.  Analysis here would render the same results as
above in which the City does not have liability.  Accordingly,
the Court will grant the City Defendants' Motion for Summary
Judgment with regard to all claims against defendants in their
official capacities.  See <u>Kentucky</u>, 473 U.S. at 165.

44

3.   Claims Against All Defendants in Individual
     Capacities

The Free Exercise Clause of the First Amendment states
that "Congress shall make no law respecting an establishment of
religion, or prohibiting the free exercise thereof...." U.S.
Const. amend. I.  Prisoners have a constitutional right not to
be forced to eat foods that violate their religion.  See
Williams, 343 F.3d at 219; De Hart, 227 F.3d 47, 52 (3d Cir.
2000); see, e.g., Norwood v. Strada, 249 F. App'x 269, 271 (3d
Cir. 2007) ("[C]ases generally indicate that prison
administrators must provide an adequate diet without violating
an inmate's religious dietary restrictions in order not to
unconstitutionally burden free exercise rights.").  Likewise,
prison administrators may violate an inmate's free exercise
rights by forcing them to engage in activities that violate
their religion.  Williams v. Bitner, 455 F.3d 186, 194 (3d Cir.
2006).

In Bitner, the plaintiff was a Muslim prisoner who
refused to work as a cook in the prison's kitchen on a day when
the prison's kitchen was serving roast pork.  Id. at 187-88.
According to the plaintiff, his religion prohibits him from
consuming or aiding others in the consumption of pork.  Id. at
187.  As a result of his refusal to prepare pork, the plaintiff

45

was disciplined by prison officials.  Id. at 188-89.  The
plaintiff sued the prison officials that disciplined him for
violating rights under the Free Exercise Clause and RLUIPA.  Id.
at 189.  In denying the prison officials motion for summary
judgment, the district court held that the plaintiff had offered
sufficient evidence to establish violations of the First
Amendment and RLUIPA.  Id.  The Third Circuit affirmed.  Id. at
194.

Plaintiff claims that Sergeant Gamgemi and Sergeant
Pote violated his free exercise rights by attempting to suppress
his hunger strike.  Although Plaintiff has not alleged that his
hunger strike was required by his religion, Plaintiff
nonetheless claims that his free exercise rights were violated.

According to Plaintiff, Sergeant Gamgemi violated his
free exercise rights by bringing him to the prison's mental
health unit in the middle of the night on May 12, 2011.  Compl.
¶ 83.  Plaintiff has not alleged, or offered evidence of, any
other interactions with Sergeant Gamgemi.  As such, Plaintiff
has failed to show that his religious practice was burdened by
any of Sergeant Gamgemi's actions.

Sergeant Pote's actions, however, present a more
complex issue.  Plaintiff claims that on the morning of May 12,
2011, Sergeant Pote entered his cell with a "regular" breakfast
meal that contained "forbidden food."  Compl. ¶ 84.  According

to Plaintiff, Sergeant Pote told Plaintiff to eat breakfast or be brought to the RHU.  Id.; Pl.'s Resp. City Defs.' Mot. Summ. J. 7.  Sergeant Pote left Plaintiff's cell after Plaintiff drank some orange juice that was on the tray.  Compl. ¶ 84.  Plaintiff was never brought to the RHU.

Plaintiff claims that Sergeant Pote's threat on the morning of May 12, 2011, deprived him of his free exercise rights.  Plaintiff claims that, like the plaintiff in Bitner, Plaintiff was forced to choose between punishment and violating his religious beliefs.  Unlike the Plaintiff in Bitner, however, Plaintiff was neither punished nor forced to violate his religious beliefs.[20]  Even when taking the evidence in the light most favorable to Plaintiff, that Sergeant Pote was satisfied with Plaintiff's choice to drink the orange juice indicates that Sergeant Pote neither intended to nor actually did burden Plaintiff's religious beliefs.

Lastly, Plaintiff claimed that Chaplain Taylor violated Plaintiff's free exercise rights.  Plaintiff, however, has presented no evidence showing that Chaplain Taylor was personally involved in failing to serve Plaintiff meals that complied with his religious dietary restrictions.  On the contrary, Plaintiff has presented evidence that Chaplain Taylor

---

[20]     Plaintiff does not show that his religion prohibited him from drinking the orange juice.

promptly assisted Plaintiff in obtaining vegetarian meals when the meal service stopped as soon as it was brought to Chaplain Taylor's attention.  Pl. Dep. 72:24-74:4.

Accordingly, the Court will grant City Defendants summary judgment with regard to the claims against Chaplain Taylor, Sergeant Gamgemi, and Sergeant Pote in their individual capacities, and each of these claims will be dismissed.

B.   <u>RLUIPA Claims</u>

Plaintiff claims that City Defendants violated RLUIPA by failing to serve Plaintiff with vegetarian meals on several occasions.  Pl.'s Resp. City Defs.' Mot. Partial Summ. J. 8-9. As a result, Plaintiff argues that he was forced to choose between violating his religious beliefs and not eating. Pl. Dep. 42:10-23; Pl.'s Resp. Aramark Mot. Summ. J., Ex. 8, Sutton Mem. 104.

1.   <u>Claims Against the City</u>

A prison's failure to provide meals that comply with inmates' religious dietary restrictions can give rise to constitutional claims.  <u>Williams</u>, 343 F.3d at 215-16.  As discussed above, in the context of RLUIPA a plaintiff must prove that there was a "substantial burden" placed on his or her religious practice.  42 U.S.C. § 2000cc-1; <u>see also</u> <u>Kretchmar v. Beard</u>, 241 F. App'x 863, 865 (3d Cir. 2007).  The plaintiff must show that this burden was caused by "a prison institution's policy or official practice."  <u>Washington</u>, 497 F.3d at 277-78.  An inmate's religious practice is substantially burdened if he or she is forced to choose between following the precepts of the religion or receiving a benefit.  <u>Id.</u> at 280.  A prisoner who is consistently not provided meals in accordance with his religious beliefs is substantially burdened in the exercise of his religion.  <u>See</u> <u>id.</u>; <u>see also</u> <u>Jupiter v. Johnson</u>, 3:10-CV-01968, 2011 WL 4527803, at *16 (M.D. Pa. Apr. 26, 2011).

In the instant matter, the City has delegated the function of providing food to Aramark.  The City, however, retained the ultimate authority to determine which inmates are entitled to receive vegetarian or kosher diets and what foods those diets would include.  <u>See</u> Pl.'s Resp. City Defendants Mot. Partial Summ. J. 5.  On September 21, 2010, the Plaintiff was

49

placed on a vegetarian diet to allow Plaintiff to comply with
his Muslim faith. Compl. ¶ 28.

Plaintiff alleges that he was not served his
vegetarian meals on several occasions, including the first week
in January 2012 and the last week in December 2012.  As a
result, Plaintiff claims that he was forced into a "Hobson's
choice" between eating and violating his religion or going
hungry.  Pl. Dep. 42:10-23; Pl.'s Resp. Aramark Mot. Summ. J.,
Ex. 8, Sutton Mem. 104.  As explained above, Plaintiff has
failed to show that any of these violations stemmed from a
policy of official practice of the city.  At best, Plaintiff's
evidence shows that the occasional lapses were clerical erros
and minor oversights which was quickly corrected when brought to
the attention of the city, and thus would not be violative of
RULIPA.  See, e.g., Shidler v. Moore, 409 F. Supp. 2d 1060, 1068
(N.D. Ind. 2006) (holding prison's clerical error of designating
inmate as Christian rather than Muslim, thus preventing him from
engaging in communal worship for 39 days, did not violate RULIPA
as it was unintentional and corrected when brought to the
defendant's attention); see also Alster v. Goord, 745 F. Supp.
2d 317, 342 (S.D.N.Y. 2010) (occasional oversights in providing
meals does not violate RULIPA).

Plaintiff also alleges that Sergeant Pote's demand
that Plaintiff eat should trigger liability for the City under

RLUIPA.  Even if Plaintiff's allegations are true, they do not trigger liability for the City for two reasons.  First, Plaintiff does not provide any evidence that Sergeant Pote was acting pursuant to a City policy or official practice.  Second, Plaintiff does not show that he actually faced a "hobson's choice," in that his decision to drink the orange juice neither violated his religious beliefs nor resulted in punishment.

Accordingly, the Court will grant the City's Motion for Summary Judgment with respect to Plaintiff's RLUIPA claim against the City, this claim will be dismissed.

### 2.    Claims Against All Defendants in Official Capacities

Plaintiff's official capacity claims against Sergeant Gamgemi, Sergeant Pote, and Chaplain Taylor are the equivalent of claims against the City.  See Will, 491 U.S. at 71.  Analysis here would not change the City's liability as set forth above.  Accordingly, the Court will grant the City Defendants' Motion for Summary Judgment with regard to all claims against defendants in their official capacities.  See Kentucky, 473 U.S. at 165.

3.   <u>Claims Against All Defendants in Individual
     Capacities</u>

As discussed above, defendants cannot be held liable
in their individual capacities under RLUIPA.  <u>Sharp</u>, 669 F.3d at
153.  Accordingly, the Court will grant summary judgment for
City Defendants with regard to Plaintiff's RLUIPA claims against
all defendants in their individual capacities.

## VI.   CONCLUSION

The Court will grant in part and deny in part Aramark
Defendants' Motion for Summary Judgment.  The Court will grant
summary judgment to all Aramark Defendants as to Plaintiff's
First Amendment Claims and Plaintiff's RLUIPA Claims.  The Court
will grant summary judgment as to Flaherty in his official
capacity.  The Court will deny Aramark Defendants' summary
judgment motion as to the remainder of Plaintiff's equal
protection claims against Aramark and against Flaherty in his
individual capacity.  The Court will also grant the City
Defendants' Motion for Partial Summary Judgment.  All claims
against the City Defendants under the First Amendment and RLUIPA
are dismissed.

Accordingly, Plaintiff may proceed on his equal protection claims for monetary damages against all City Defendants as they did not move for summary judgment on that issue.

All of Plaintiff's claims for injunctive or declaratory relief are moot and, accordingly, are dismissed.

In sum, Counts III, IV, and V are dismissed.[21]  To the extent they seek monetary damages for a violation of the Equal Protection Clause of the Fourteenth Amendment, Counts I, II, and VI may proceed.

An appropriate order accompanies this opinion.

---

[21]     Count V is dismissed pursuant to agreement by Plaintiff.